## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BEST WESTERN INTERNATIONAL, INC.,
a non-profit Arizona corporation,

        Plaintiff,

    v.

JOHN DOE, an Internet website administrator;
JANE DOES 1-X, Internet website bloggers
and Members of Best Western International, Inc.;
JOHN DOES 1-X, Internet website bloggers and
Governors of Best Western International, Inc.,

        Defendants.

U.S. District Court for the
District of Delaware
Misc. Case No. 06-219

U.S. District Court for the
District of Arizona
Case No. 2:06-cv-01537-DGC

**PUBLIC VERSION**

---

### DEFENDANT JANE DOE 1'S BRIEF OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENA DUCES TECUM  DIRECTED TO NON-PARTY WITNESS L.N.H., INC. AND FOR A PROTECTIVE ORDER

OF COUNSEL:

Daniel McAuliffe
Todd Feltus
Gregory B. Collins
SNELL & WILMER
One Arizona Center
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070

Richard T. Mullineaux
R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP
One Commerce Square
4106 Charlestown Road
New Albany, IN 47150
Phone: (812) 949-2300
Facsimile: (812) 949-8556

William R. Denny (ID No. 2580)
James M. Kron (ID No. 3898)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware  19899-0951
(302) 984-6000
Fax:  (302) 658-1192
wdenny@potteranderson.com
jkron@potteranderson.com

*Attorneys for Defendant Jane Doe 1*

Date:  December 11, 2006
Public Version Dated:  December 15, 2006
766626v2
public version:767627

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ........................................................1

SUMMARY OF ARGUMENT ...............................................................................3

ARGUMENT ..........................................................................................................3

    I.      RIGHT TO FREE SPEECH .....................................................................3

    II.     DEFAMATION .......................................................................................7

          A.     False and Defamatory Statement Concerning BWI .....................8

          B.     Qualified Privilege:  Statement of Interest................................13

    III.    BREACH OF EXPRESS AND IMPLIED CONTRACT....................16

          A.     Express Contract .......................................................................16

          B.     Implied Contract .......................................................................17

    IV.    TORTIOUS INTERFERENCE WITH BUSINESS
          RELATIONSHIPS.............................................................................18

CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

Page

CASES

*Alexander v. O'Neil*,
    267 P.2d 730 (Ariz. 1954) ...........................................................................18

*Alpine Indus. Computers, Inc. v. Cowles Publ'g. Co.*,
    57 P.3d 1178, 1183 (Wash. Ct. App. 2002),
    *amended on other grounds*, 64 P.3d 49 (2003) ......................................15

*Am. Homepatient Inc. v. Collier*,
    No. Civ. A. 274-N,
    2006 WL 1134170 (Del. Apr. 19, 2006) ..................................................19

*Ariz. Bd. of Regents v. York Refrigeration Co.*,
    565 P.2d 518 (Ariz. 1977) ........................................................................17

*Battista v. Chrysler Corp.*,
    454 A.2d 286 (Del. 1982) .........................................................................14

*Best Western Int'l, Inc. v. Doe*,
    Slip Op., No. CV06-1537-PHX-DGC,
    2006 WL 2091695 (D. Ariz. July 25, 2006)............................................2

*Best Western Int'l, Inc. v. Doe*,
    Slip Op., No. CV06-1537-PHX-DGC,
    (D. Ariz. Oct. 24, 2006)............................................................................3

*Boswell v. Phoenix Newspapers, Inc.*,
    730 P.2d 178 (Ariz. Ct. App. 1985),
    *approved as supplemented by*,
    730 P.2d 186 (Ariz. 1986) ..........................................................................7

*Burns v. Davis*,
    993 P.2d 1119 (Ariz. Ct. App. 1999),
    *review denied*, (Feb. 8, 2000) ...........................................................7, 9, 16

*Campanelli v. Reagents of the Univ.*,
    44 Cal. App.4th 572 (1996) .....................................................................8, 9

*Capital Management Co. v. Brown*,
    813 A.2d 1094 (Del. 2003).....................................................................17, 18

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ..................................................................................................6

*Chaplinsky v. State of New Hampshire,*
    315 U.S. 568 (1942) ..................................................................................................5

*Citadel Holding Corp. v. Roven,*
    26 F.3d 960 (9th Cir. 1994) ......................................................................................6

*Clark v. Compania Ganadera de Cananea, S.A.,*
    387 P.2d 235 (Ariz. 1963) ......................................................................................17

*Coleman v. Watts,*
    87 F. Supp.2d 944 (D. Ariz. 1998) ........................................................................17

*Cooper v. Portland Gen. Elec. Corp.,*
    824 P.2d 1152 (Or.), *review denied,*
    830 P.2d 595 (Or. 1992) ........................................................................................14

*DeBonaventura v. Nationwide Mutual Insurance Company,*
    428 A.2d 1151 (Del. 1981) ....................................................................................18

*Dendrite Intern. v. Doe No. 3,*
    775 A.2d 756 (N.J. Super. Ct. 2001) ....................................................................20

*Doe v. Cahill,*
    884 A.2d 451 (Del. 2005) ..........................................................................2, 5, 6, 7, 20

*Dombey v. Phoenix Newspapers, Inc.,*
    724 P.2d 562 (Ariz. 1986) ................................................................................12, 13

*Grier v. Johnson,*
    232 A.D.2d 846 (1996) ..........................................................................................14

*Hansen v. Stoll,*
    636 P.2d 1236 (Ariz. Ct. App. 1981) ....................................................................13

*Heller v. Dover Warehouse Market, Inc.,*
    515 A.2d 178 (Del. 1986) ......................................................................................14

*Hustler Magazine v. Falwell,*
    485 U.S. 46 (1988) ............................................................................................8, 10

*Immunomedics, Inc. v. Doe,*
    775 A.2d 773 (N.J. Super. Ct. 2001) ....................................................................19

*John Doe v. 2TheMart.com, Inc.*,
   140 F. Supp.2d 1088 (W.D. Wash. 2001) ................................................................4, 5

*Kuehn v. Stanley*,
   91 P.3d 346 (Ariz. Ct. App. 2004),
   *review denied* ................................................................................................17

*Lerwick v. Krna*,
   815 N.Y.S.2d 767 (N.Y. App. Div. 2006),
   *leave to appeal denied*, 7 N.Y.3d 712,
   _____ N.E.2d _____ (2006) ................................................................................15

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001) ................................................................................18

*McIntyre v. Ohio Elections Commission*,
   514 U.S. 334 (1995) ....................................................................................3, 4, 5

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) ........................................................................................8, 10

*Miller v. Hehlen*,
   104 P.3d 193 (Ariz. Ct. App. 2005) ....................................................................18

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995) ..............................................................................10

*Patton v. Cox*,
   276 F.3d 493 (9th Cir. 2002) ................................................................................7

*Peagler v. Phoenix Newspapers, Inc.*,
   560 P.2d 1216 (Ariz. 1977) ................................................................................13

*Pierce v. Burns*,
   185 A.2d 477 (Del. 1962) ..................................................................................14

*Rawlings v. Apodaca*,
   726 P.2d 565 (Ariz. 1986) ..................................................................................17

*Reno v. ACLU*,
   521 U.S. 844 (1997) ..........................................................................................4

*Riley v. Moyed*,
   529 A.2d 248 (Del. 1987) ....................................................................................9

*Rodriquez v. Panayiotou,*
    314 F.3d 979 (9th Cir. 2002) ................................................................9

*Slawik v. News-Journal Co.,*
    428 A.2d 15 (Del. 1981) ..................................................................7, 8

*Talley v. California,*
    362 U.S. 60 (1960) .............................................................................4

*Underwager v. Channel 9 Australia,*
    69 F.3d 361 (9th Cir. 1995) ................................................................9

*Wagenseller v. Scottsdale Mem'l Hosp.,*
    710 P.2d 1025 (Ariz. 1985),
    *abrogated on other grounds by*, A.R.S. § 23-1501 .............................19

*Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors,*
    909 P.2d 486 (Ariz. 1995) .................................................................18

*Yetman v. English,*
    811 P.2d 323 (Ariz. 1991) ...........................................................8, 9, 11

## STATUTES

RESTATEMENT (SECOND) OF TORTS § 558 ......................................................7

RESTATEMENT (SECOND) OF TORTS § 561(b) ............................................7, 13

RESTATEMENT (SECOND) OF TORTS § 564 ....................................................13

RESTATEMENT (SECOND) OF TORTS § 581A ....................................................8

RESTATEMENT (SECOND) OF TORTS § 594 ....................................................14

RESTATEMENT (SECOND) OF TORTS § 604 ....................................................15

RESTATEMENT (SECOND) OF TORTS § 614 ......................................................8

RESTATEMENT (SECOND) OF TORTS § 617 ....................................................13

RESTATEMENT (SECOND) OF TORTS § 767 ....................................................19

## MISCELLANEOUS

50 AM. JUR.2D *Libel and Slander* § 156 (2006) ..........................................11

50 AM. JUR.2D *Libel and Slander* § 162 (2006)..........................................................................10

50 AM. JUR.2D *Libel and Slander* § 164 (2006)..........................................................................12

50 AM. JUR.2D *Libel and Slander* § 278 (2006)..........................................................................14

50 AM. JUR.2D *Libel and Slander* § 279 (2006)..........................................................................16

50 AM. JUR.2D *Libel and Slander* § 351 (2006)..........................................................................13

Comes now Defendant Jane Doe 1 ("Member Doe 1"), an Internet website blogger and Member of Best Western International, Inc. ("BWI), by counsel, and moves to quash the Subpoena issued to L.N.H., Inc. ("LNH") on November 3, 2006.[1]  Denny Decl., Ex. 1.  To support this request, Member Doe 1 offers the following Brief in support of said motion.

## NATURE AND STAGE OF PROCEEDINGS

The present controversy arises out of Best Western International, Inc.'s ("BWI") allegations that Members[2] and Governors[3] of BWI have posted articles on an Internet Website, *i.e.*, "freewrites.net."  The "Free Writes" Website, which was registered on May 1, 2006, was intended to allow candid discussion among Members, Governors, Directors, and employees of Best Western International, Inc.  To achieve this goal, "freewrites.net" offers anonymity to persons, such as Member Doe 1, who submit articles on the site.  In submitting the articles, the authors are engaged in purely expressive behavior and are, therefore, entitled to protection under the First Amendment.

Nevertheless, on June 16, 2006, Best Western International, Inc. ("BWI") filed – with the U.S. District Court in Phoenix, Arizona – a sixteen-count complaint against several John and Jane Doe Defendants (Cause Number CV06-1537-PHX-DGC), alleging breaches of express and implied contracts, breach of implied covenants of good faith and fair dealing, breach of

---

[1]    Exhibit references herein refer to exhibits attached to the Declaration of William R. Denny In Support of Defendant Jane Doe 1's Motion To Quash Subpoena *Duces Tecum* Directed To Non-Party Witness L.N.H., Inc. And For a Protective Order (hereinafter "Denny Decl., Ex. ___"), filed contemporaneously herewith.

[2]    "BWI's Members own and operate more than 2,400 hotels and other lodging properties under the BWI name and marks."  Denny Decl., Ex. 2 at ¶11 thereof.

[3]    "BWI's Board of Directors communicates with BWI Members through Regional Governors who are appointed to oversee a specific geographic district.  Governors are also Members of BWI."  Denny Decl., Ex. 2 at ¶12 thereof.

fiduciary duties, defamation *per se*, trademark infringement, unfair competition, tortious interference with prospective business relations, and trademark dilution. That same day, BWI also filed a motion for expedited and accelerated discovery, seeking permission to serve subpoenas on various internet service providers and obtain the identities of the anonymous defendants, prior to the Federal Rule 26(f) conference.

On July 25, 2006, the Arizona District Court denied BWI's motion for expedited discovery because the corporation had not presented *prima facie* evidence sufficient to withstand a motion for summary judgment. *Best Western Int'l, Inc. v. Doe*, Slip Op., No. CV06-1537-PHX-DGC, 2006 WL 2091695 (D. Ariz. July 25, 2006). Denny Decl., Ex. 3. The Arizona Court adopted this heightened standard, which was first enunciated in *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005), because of the significant First Amendment interests at stake. On August 18, 2006, and pursuant to the Court's order, BWI filed its renewed motion to conduct accelerated and expedited discovery, providing the Court with several posts – *i.e.*, articles submitted on "freewrites.net" – that it claims were actionable under its theories. Denny Decl., Ex. 4.[4]

In the meantime, on August 3, 2006, BWI filed a motion to amend its complaint to add H. James Dial and James Furber as defendants. Dial is a BWI Member from Indiana, who originally came forward to object to BWI's initial motion to conduct expedited discovery. Furber's name was improperly disclosed by Tucows, Inc., another Internet Service Provider, pursuant to a request for information from BWI. BWI sent Tucows a subpoena – that it now claims was not a subpoena – and Tucows responded to it by providing the name of Furber as the

---

[4]     The posts at issue that BWI alleges are defamatory are attached "under seal" as Exhibits B1 through B28 to Exhibit 4 of the Denny Declaration, filed contemporaneously herewith. Hereinafter, references to the allegedly defamatory posts will be to "**Pl. Ex. B1 through B28**" or to "**Exhibit B1 through B28**."

site administrator for "freewrites.net." Furber is not a Member or Governor of BWI, but merely the site administrator for the "Free Writes" Website.

In response to BWI's motion to amend its complaint, Dial and Furber filed a motion to dismiss the complaint and a response in opposition to BWI's motion to amend. On October 25, 2006, the Arizona District Court granted the motion to dismiss with regard to the trademark infringement claims, under both the common law and the Lanham Act, but permitted BWI to amend its complaint on the remaining state-law claims to add Dial and Furber. Without addressing the sufficiency of BWI's defamation claim against the Defendants, the Arizona District Court also allowed the corporation to engage in expedited discovery. *Best Western Int'l, Inc. v. Doe*, Slip Op., No. CV06-1537-PHX-DGC, (D. Ariz. Oct. 24, 2006). Denny Decl., Ex. 5. Subsequently, BWI issued the subpoena in question to LNH.

## SUMMARY OF ARGUMENT

In its amended complaint, BWI alleges, in pertinent part, that it was defamed by several articles posted on the "Free Writes" Website, and that Member Doe 1 breached express and implied contracts, breached an implied covenant of good faith and fair dealing, and tortiously interfered with business relationships. However, none of the postings made on "freewrites.net" – or anywhere else for that matter – are defamatory and BWI has failed to establish a *prima facie* case on any of its claims against Member Doe 1. Therefore, the corporation's interest in protecting its reputation and interests do not outweigh Member Doe 1's right to engage in anonymous free speech under the First Amendment to the United States Constitution. Accordingly, BWI is not entitled to the discovery requested. As a result, this Court should quash the subpoena issued to LNH and issue a protective order against further attempts at the discovery requested.

## ARGUMENT

### I.   RIGHT TO FREE SPEECH

The right of a public speaker, such as Member Doe 1, to maintain his anonymity is firmly rooted in the First Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995) ("Accordingly, an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of the publication, is an aspect of the freedom of speech protected by the First Amendment."); *see also Talley v. California*, 362 U.S. 60, 62 (1960).  In *Talley*, the United States Supreme Court struck down a California statute that required the name of the author and printer of a political pamphlet to be displayed on the cover. 362 U.S. at 62.  In so doing, the Court pointed out that "[p]amphlets and leaflet [sic] ... 'have been historic weapons in the defense of liberty.'" *Id.*  Indeed, anonymous speech has played a vital and well-documented role in our nation's history. *Id.* at 64-65.  The United States' earliest and most influential works were anonymous. *See John Doe v. 2TheMart.com, Inc.*, 140 F. Supp.2d 1088, 1092 (W.D. Wash. 2001) ("The Federalist Papers were written under the name of "Publius.").

This tradition continues as some of the most vigorous and constructive contemporary political discourse is conducted anonymously. *See, e.g., McIntyre*, 514 U.S. at 347.  Without a right to remain anonymous, the purpose of the First Amendment would be frustrated, as the fear of retaliation at the hands of those who may disagree with a speaker might dissuade him from speaking out in the first place. *Id.*

The right to anonymous speech has been extended to the internet. *See, e.g., Reno v. ACLU*, 521 U.S. 844, 870 (1997) ("[The Court] agrees with [the District Court's] conclusion that our cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied to [the internet]."). This extension is appropriate inasmuch as the internet readily

4

"facilitates the rich, diverse, and far ranging exchange of ideas." *2TheMart.com*, 140 F. Supp.2d at 1092.

Because the right to anonymous speech is a well-recognized component of the First Amendment, Courts protect anonymous speech with the same vigor demonstrated in the protection of free speech generally. *See id.* ("A component of the First Amendment is the right to speak with anonymity. This component is well established."). Courts have recognized, however, that the right to anonymous speech, like the right to free speech generally, is not absolute. *Id.* Thus, for instance, the First Amendment will not protect individuals who use anonymous speech to defame others. *Id.* at 1093. In this regard, Justice Murphy, writing for a unanimous Court, explained:

> Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words-those which by their very utterance inflict injury or tend to incite an immediate breach of peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution ... ."

*Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572 (1942); *see also McIntyre*, 514 U.S. at 357 ("The right to remain anonymous may be abused when it shields fraudulent conduct. But political speech by its nature will sometimes have unpalatable consequences, and, in general, our society accords greater weight to the value of free speech than to the dangers of its misuse.").

In *Cahill*, 884 A.2d at 456-57, the Delaware Supreme Court was asked to determine at what point a speaker's First Amendment right to anonymous speech will yield to the right of the target of his or her speech, to protect the target's reputation. Noting that its task was to identify a standard by which these competing interests can be balanced and protected, the Court ultimately determined that a plaintiff who wishes to discover or unmask the identity of an anonymous defendant must first establish a *prima facie* showing sufficient to withstand a motion for summary judgment. *Id.* In adopting this heightened standard – as opposed to a less stringent standard such as "good faith," the *Cahill* Court noted:

> [T]here is reason to believe that many defamation plaintiffs bring suit merely to unmask the identities of anonymous critics. As one commentator has noted, "[t]he sudden surge in John Doe suits stems from the fact that many defamation actions are not really about money." "The goals of this new breed of libel action are largely symbolic, the primary goal being to silence John Doe and others like him." This "sue first, ask questions later" approach, coupled with a standard only minimally protective of the anonymity of defendants, will discourage debate on important issues of public concern as more and more anonymous posters censor their online statements in response to the likelihood of being unmasked.

*Id.* at 457. Thus, in adopting the summary judgment standard, the *Cahill* Court recognized the substantial harm that could befall an anonymous defendant if his or her identity were disclosed without a proper showing sufficient to defeat a motion for summary judgment. *Id.* at 459. The Arizona District Court in this matter has, likewise, recognized this potential for harm when it adopted the *Cahill* standard.

Here, BWI cannot satisfy the *Cahill* standard because its claim for defamation is not sufficient to defeat a motion for summary judgment. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial"); *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994).  As a result, BWI's unfounded allegations of damage to its reputation wane in comparison to Member Doe 1's substantial First Amendment interest in engaging in free and anonymous expression.  Accordingly, the subpoena to LNH should be quashed and a protective order issued.

## II.    DEFAMATION

In its First Amended Complaint, BWI maintains that it was defamed by the anonymous Defendants, including Member Doe 1, through several of the entries posted on the "Free Writes" Website.  This Court, as well as the Arizona District Court, applies the RESTATEMENT (SECOND) OF TORTS (the "RESTATEMENT") to state-law defamation actions.  *See, e.g., Slawik v. News-Journal Co.*, 428 A.2d 15, 17 (Del. 1981); *see also Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002); and *Burns v. Davis*, 993 P.2d 1119, 1126 (Ariz. Ct. App. 1999), *review denied*, (Feb. 8, 2000).  Pursuant to Section 561(b) of the RESTATEMENT, a not for profit corporation *that relies upon financial support from the public* may sue for defamation.  BWI, however, does not fit this category because it is financially dependent upon its members, not the public at large.  Therefore, under the RESTATEMENT, BWI may not maintain a cause of action for defamation.  On this basis alone, this Court should quash the subpoena in question and grant Member Doe 1's request for a protective order.

Even assuming, *arguendo*, that BWI may sue for defamation in Arizona, the subpoena to LNH should be quashed, and a protective order issued, because the corporation cannot establish that the posts on the "Free Writes" Website defame it.  To establish a case for defamation, BWI must prove:  (1) a false and defamatory statement concerning BWI; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the

existence of special harm caused by the publication. *See* RESTATEMENT (SECOND) OF TORTS §
558; *see also Cahill*, 884 A.2d at 463; and *Boswell v. Phoenix Newspapers, Inc.*, 730 P.2d 178,
180, 182 n.3 (Ariz. Ct. App. 1985) (citing all elements but damages and referring to
RESTATEMENT Section 558), *approved as supplemented by*, 730 P.2d 186 (Ariz. 1986). Here,
BWI has failed to make a showing sufficient to prove the existence of any of these elements, all
of which are essential to its case against Member Doe 1.

A.    **False and Defamatory Statement Concerning BWI**

BWI's claim for defamation cannot succeed because the corporation cannot
demonstrate that any of the twenty-eight statements, alleged to be defamatory, are false. *See*
RESTATEMENT (SECOND) OF TORTS § 581A ("One who publishes a defamatory statement of fact
is not subject to liability for defamation if the statement is true."). Without the requisite showing
of falsity, BWI has failed to establish a case for defamation and this Court should quash the
subpoena to LNH.

Further, BWI cannot establish that several of the alleged defamatory comments
represent anything other than rhetorical political invective, opinion, or hyperbole, all of which
are protected by the First Amendment. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-20
(1990); *see also Hustler Magazine v. Falwell*, 485 U.S. 46, 50 (1988). By protecting speakers
whose statements cannot reasonably be interpreted as allegations of fact, courts "provide[]
assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical
hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich*, 497
U.S. at 20 (quoting *Falwell*, 485 U.S. at 53-55).

The issue of whether an allegedly defamatory statement constitutes an actionable
factual assertion is a question of law for the court to decide. *Campanelli v. Reagents of the
Univ.*, 44 Cal. App.4th 572, 578 (1996); *see also Slawik*, 428 A.2d at 17. In *Yetman v. English*,

8

811 P.2d 323, 329 (Ariz. 1991), the Arizona Supreme Court explained: "The trial court decides, in the first instance, whether, under all the circumstances, a statement is capable of bearing a defamatory meaning." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 614); *see also Slawik*, 428 A.2d at 17. The jury, then, decides whether the defamatory meaning of the statement was in fact conveyed. *Yetman*, 811 P.2d at 329. The *Yetman* Court noted, however, that, in some cases, "imputations are so clearly innocent or so clearly defamatory that the court is justified in determining the question itself." *Id.*; *cf. Campanelli*, 44 Cal. App.4th at 578 (recognizing that if the court concludes that the statement at issue could reasonably be construed as either fact or opinion, the issue should be resolved by a jury).

Moreover, to determine whether an alleged defamatory statement implies a factual assertion, the Court must examine the "totality of the circumstances" in which the statement was made. *See Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995). In so doing, the Court should look at the statement both "in its broad context," considering "the general tenor of the entire work, the subject of the statements, the setting, and the format of the work," and in its "specific context," noting the "content of the statements," the "extent of figurative or hyperbolic language used," and "the reasonable expectations of the audience in that particular situation." *Id.*; *see also Burns*, 993 P.2d at 1119; and *Riley v. Moyed*, 529 A.2d 248, 252 (Del. 1987). In applying this test, the "court must place itself in the position of the ... reader, and determine the sense of meaning of the statement according to its natural and popular construction" and the "natural and probable effect [it would have] upon the mind of the average reader." *Rodriquez v. Panayiotou*, 314 F.3d 979, 986 (9th Cir. 2002); *see also Yetman*, 811 P.2d at 329.

In the present case, Exhibits B2, B4, B6, B10 through B12, B14, B15, B19, B22, B23, and B25 through B28 – even if authored by member Doe 1 – clearly constitute opinion or rhetorical hyperbole, as opposed to factual assertions.  The *Milkovich* Court explained the difference as follows:

> [U]nlike the statement, "In my opinion Mayor Jones is a liar," the statement, "In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin," would not be actionable.

497 U.S. at 20.  A crucial inquiry in distinguishing opinion from facts is whether the maker of the statement intended to state an objective fact or merely make a personal observation of the facts.  50 AM. JUR.2D *Libel and Slander* § 162 (2006).

Here, the speech at issue does not state any objective facts, but rather, merely expresses the author's personal opinion regarding the political leadership of the organization. Exhibit B2, for example,

. In a similar vein, Exhibit B4 contains language, tantamount to an editorial commentary, concerning

. **(Pl. Ex. B4)**

Exhibits B6, B12, B14, B17, B19, B24, and B25, likewise, represent nothing more than mere rhetorical observations and hyperbole.  Statements about

cannot reasonably be interpreted as stating actual facts about an individual director, much less BWI as a separate corporate entity.  *See*, *e.g.*, *Falwell*, 485 U.S. at 50.  The same analysis holds true for the references in Exhibit B17,

; in Exhibit B19, synopsizing that

, and in Exhibit B24

10

. Because no reasonable person could conclude that the contested statements imply an assertion of objective fact, BWI's defamation claims are foreclosed by the First Amendment. *See, e.g., Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).

In addition, the author of Exhibit B25 merely expresses his or her opinion that

." **(Pl. Ex. B25)** These statements, which do not represent actual facts, are incapable of bearing a defamatory meaning and, therefore, this Court is justified in resolving the fact versus opinion issue as a matter of law. *See, e.g., Yetman*, 811 P.2d at 329.

Further, the authors of Exhibits B21, B27, and B28 pose certain questions, which BWI argues are defamatory. To be defamatory, a question must be reasonably read as an assertion of a false fact; inquiry itself, however embarrassing or unpleasant to its subject, is not accusation." 50 AM. JUR.2D *Libel and Slander* § 156. The question in Exhibit 21 – *i.e.*,

—

cannot reasonably be read as an assertion of false fact, nor does it imply that

. **(Pl. Ex. B Index)** Exhibit 21 is imply not an accusation of any sort and is, therefore, not actionable as defamation.

Exhibit 27, likewise, does not contain an assertion of false fact. Instead, after expressing an opinion regarding                    , the author of this statement writes:

**(Pl. Ex. B27)**  This latter question does not

state that                                **(Pl. Ex. Index)**  Nor does it impugn

11

. Because

Exhibit 27 does not disparage or discredit BWI, it cannot form the basis of a defamation action

against Member Doe 1.

Moreover, in Exhibit 28, the anonymous author writes:

Read in context, it is clear that this author is not                 ; nor is the author suggesting

that                                                              . Because the question

posed in Exhibit B28 cannot reasonably be understood as an assertion of false fact, it, like the

other allegedly defamatory statements against Member Doe 1, is not actionable.

Lastly, the language in Exhibit B22 – *i.e.*,

– is not actionable because it is unverifiable. "To be actionable, a defamatory statement must

be specific and verifiable by reference to fact. Assertions whose elements are unverifiable,

including statements regarding motive, are intrinsically unsuited to serve as a basis for libel." 50

AM. JUR.2D *Libel and Slander* § 164 (2006). Here, the author's conjecture regarding

, is too

imprecise to be actionable. Put another way, the statement contained in Exhibit B22 is not

objectively capable of being proved or disproved and is, thus, unverifiable, it is not actionable as

defamation. *See* 50 AM. JUR.2D *Libel and Slander* § 164.

Moreover, and again assuming that it may be defamed, BWI has failed to

demonstrate that many of the alleged defamatory statements *concerned the corporation*, as

opposed to a few of its individual directors. *See Dombey v. Phoenix Newspapers, Inc.*, 724 P.2d

562, 571 (Ariz. 1986). A corporation is not defamed by communications defamatory of its officers, agents, or stockholders unless they *also* reflect discredit upon the method by which the corporation conducts its business.[5] *See id.* (citing RESTATEMENT (SECOND) OF TORTS § 561 and cmt. b). The defamation of an individual can only cause injury to a corporation if the two are so interconnected that a reasonable person would perceive harm to one as harm to the other. *Dombey*, 724 P.2d at 571; *cf. Peagler v. Phoenix Newspapers, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977) (noting that because a reader of the article would understand that it referred to the plaintiff individually, as well as to the corporation, the individual was libeled as well).

Here, a number of the statements alleged to be defamatory are

. *See* Pl. Exs. B1, B3, B8-B11, B13, B16, B20, and B24. If anything, the statements were made in the best interests of BWI. Because none of the statements defame BWI's business reputation, discredit it, or tend to cause loss to it in the conduct of its business, BWI cannot demonstrate an essential element of its defamation claim, *i.e.*, that the statements concern BWI. *See, e.g., Hansen v. Stoll*, 636 P.2d 1236, 1240 (Ariz. Ct. App. 1981) (recognizing that the burden is upon the plaintiff to show publication "of and concerning" him) (citing RESTATEMENT (SECOND) OF TORTS §§ 564, 617).

### B.    Qualified Privilege:  Statement of Interest

Even assuming that BWI has successfully demonstrated that the posts on the Website contain defamatory statements concerning the corporation, this Court should quash the subpoena because such publications, *i.e.*, Exhibits B1 through B28, are privileged. Specifically,

---

[5]    If a publication relates solely to an officer or employee of a corporation in his or her private or personal character, and not in his or her capacity as an officer or employee of the corporation, or in connection with the conduct or management of the corporate business, the right of action is not in the corporation, but in the individual. *See* 50 AM. JUR.2D *Libel and Slander* § 351.

13

because BWI's defamation claim against Member Doe 1 is based upon alleged disclosures on the
"Free Writes" Website, which were purportedly shared between members and governors of BWI,
Member Doe 1 – himself a member – enjoys a qualified privilege. "A qualified privilege arises
when a person makes a good-faith, bona fide communication upon a subject in which he or she
has an interest, or a legal, moral or societal interest to speak, and the communication is made to a
person with a corresponding interest." *Grier v. Johnson*, 232 A.D.2d 846, 847 (1996); *see also*
*Pierce v. Burns*, 185 A.2d 477, 479 (Del. 1962); and RESTATEMENT (SECOND) OF TORTS § 594.
This qualified immunity may be lost, however, if: (1) the publisher does not believe, or lacks
reasonable grounds for belief, in the truth of the alleged defamatory statement; (2) the
defamatory matter is published for a purpose other than that for which the privilege is given; (3)
the publication is made to a person not reasonably believed to be necessary for achieving the
purpose of the privilege; or (4) if the publication includes defamatory matter not reasonably
believed to be necessary to accomplish the purpose of the privilege. *Cooper v. Portland Gen.*
*Elec. Corp.*, 824 P.2d 1152, 1156-57 (Or.), *review denied*, 830 P.2d 595 (Or. 1992); *see also*
*Battista v. Chrysler Corp.*, 454 A.2d 286 (Del. 1982); and *Heller v. Dover Warehouse Market,*
*Inc.*, 515 A.2d 178 (Del. 1986).

   In the present case, the statements, reproduced in Exhibits B1 through B28, were
made in good faith, in connection with Member Doe 1's responsibility to act in the best interests
of BWI. *See, e.g.*, 50 AM. JUR. 2D *Libel and Slander* § 278 ("Within the context of qualified
privilege, the requirement of 'good faith' means that the speaker must have had reasonable
grounds for believing that the statement made was correct, but proof of ultimate truth is not
necessarily required." "In determining whether a defendant acted in good faith as a matter of
law for the conditional privilege to exist, a court may consider the face of the report, the occasion

on which it was written[,] conduct of defendant in connection with the report, and the

relationship between the publishers and the recipients.")  The allegedly defamatory statements

were published within the scope of the "common interest" privilege and do not include matter

not reasonably believed to be necessary to accomplish the purpose of the privilege.  What is

more, the statements were not excessively published, but rather, were submitted through a

medium reasonably calculated to reach only persons of common interest, *i.e.*, Members,

Governors, Directors, and employees.  Comment b to Section 604 of the RESTATEMENT

provides:

> Often the only practicable means of communicating defamatory
> matter involves a probability or even a certainty that it will reach
> many persons whose knowledge of it is of no value in
> accomplishing the purpose for which the privilege is given.  In this
> case, the publication is not excessive or an abuse of the privilege, if
> the importance of the interest involved, the gravity of the harm
> threatened to it and the inconvenience of any other means of
> communication make the publication reasonable.  Thus the
> publication in a fraternal magazine of disciplinary action taken
> against a member for cause is not an abuse of a privilege because
> the magazine may be seen by persons who are not members of the
> order.  Again, the use of the short wave by police authorities to
> broadcast the description of suspected fugitives from justice does
> not become unprivileged because the equipment of many privately
> owned radio reception instruments enables persons unconcerned
> with police matters to tune in on police calls.

*Id.*  Because of the significant interest – shared by all members and governors of BWI – to act in

the best interests of the corporation,

, and the inconvenience of any other medium of communication, publication over the

Internet was reasonable.  Therefore, Member Doe 1 did not lose his qualified privilege merely

because the statements may have incidentally reached people outside of the shared interest.

Inasmuch as Member Doe 1 has demonstrated that the statements were protected

by a qualified privilege, the burden shifts to BWI to prove an abuse of that privilege.  *Lerwick v.*

*Krna*, 815 N.Y.S.2d 767, 769 (N.Y. App. Div. 2006), *leave to appeal denied*, 7 N.Y.3d 712,

___ N.E.2d ___ (2006). To meet its burden, BWI must offer evidence sufficient to permit a

reasonable trier of fact to find clear and convincing proof of abuse. *Alpine Indus. Computers,*

*Inc. v. Cowles Publ'g. Co.*, 57 P.3d 1178, 1183 (Wash. Ct. App. 2002), *amended on other*

*grounds*, 64 P.3d 49 (2003). Because a qualified privilege "rebuts the malice that is implied by

law from the making of a defamatory statement, a communication loses such a privilege if it was

made with malice." 50 AM. JUR.2D *Libel and Slander* § 279. A statement is made with actual

malice when the declarant or author makes the statement with knowledge that it was false or with

reckless disregard for the truth. *Burns*, 993 P.2d at 1128.

  Here, BWI cannot demonstrate that Member Doe 1 abused his qualified privilege

by submitting entries, if any, on the "Free Writes" Website. Specifically, BWI cannot produce

any evidence that Member Doe 1 either did not believe the allegedly defamatory statements, or

lacked reasonable grounds for believing that they were true. Nor can BWI show that the

statements were made with reckless disregard for the truth. BWI, therefore, cannot overcome

Member Doe 1's qualified privilege to communicate with other members and governors of the

corporation. Because BWI has failed to establish an abuse of privilege, its complaint for

defamation against Member Doe 1 fails, as a matter of law, and BWI is, consequently, not

allowed to conduct the discovery requested. This Court should quash the subpoena issued to

LNH and issue a protective order preventing further subpoenas to Internet Service Providers.

## III. BREACH OF EXPRESS AND IMPLIED CONTRACT

### A. Express Contract

  BWI alleges in its First Amended Complaint that Member Doe 1's activities on

the "Free Writes" Website breached his membership agreement with BWI by improperly using

the "Best Western" mark, utilizing BWI equipment inappropriately, and by disclosing

confidential information on the Internet establish a *prima facie* case, on the corporation's behalf, for breach of contract.6  To demonstrate a breach of contract, a plaintiff is required to prove the existence of a contract, its breach, and the resulting damage.  See Coleman v. Watts, 87 F. Supp.2d 944, 955 (D. Ariz. 1998) (citing Clark v. Compania Ganadera de Cananea, S.A., 387 P.2d 235, 237 (Ariz. 1963).  The terms of the contract must be established with sufficient specificity that the obligations involved may be ascertained.  Coleman, 87 F. Supp.2d at 955.

BWI fails in its First Amended Complaint to make the *prima facie* showing necessary as a first step to overcome Member Doe 1's First Amendment right to anonymous speech.  Moreover, BWI cannot establish that it suffered any damages from the breach.  Because BWI is unable to prove that Member Doe 1 breached his membership agreement and, further, inasmuch as the corporation has failed to establish resultant damages, this Court should quash the subpoena issued to LNH and issue a protective order preventing the requested discovery.

### B.    Implied Contract

BWI, also alleges in its First Amended Complaint that Member Doe 1 has breached his implied contract with the corporation not to reveal confidential information.  Both Arizona and Delaware recognize implied contracts and gives them the same legal effect as express contracts.  *Ariz. Bd. of Regents v. York Refrigeration Co.*, 565 P.2d 518, 521 (Ariz. 1977); *see also Capital Management Co. v. Brown*, 813 A.2d 1094, 1098 (Del. 2003).  An

---

6    In Plaintiff's Amended Complaint, BWI argues that Member Doe 1 breached an implied covenant of good faith and fair dealing.  A covenant of good faith and fair dealing is implied in every contract.  *Kuehn v. Stanley*, 91 P.3d 346, 354 (Ariz. Ct. App. 2004), *review denied*.  This covenant requires that neither party act to impair the right of the other to receive the benefits that flow from their agreement or contractual relationship.  *Id.*  As a general rule, an implied covenant of good faith and fair dealing cannot directly contradict an express contractual term.  *Id.*  Accordingly, "'the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to.'"  *Id.* (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986)).

implied contract is one not created or evidenced by explicit agreement, but inferred by the law as a matter of reason and justice from the acts and conduct of the parties and circumstances surrounding their transaction. *Alexander v. O'Neil*, 267 P.2d 730, 734 (Ariz. 1954); *Brown*, 813 A.2d at 1098.

BWI alleges that Member Doe 1, who – by virtue of his status as a Member of BWI – receives confidential information from the corporation, has impliedly agreed not to reveal such information and, further, that, by participating in the "Free Writes" Website, Member Doe 1 has breached his implied contract. The allegations are insufficient to establish a *prima facie* case against Member Doe 1. Accordingly, the subpoena to LNH should be quashed and a protective order issued.

## IV.    TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

Lastly, BWI alleges that Member Doe 1's activities on the Website amounted to a tortious interference with BWI's business relationships. To establish a *prima facie* claim for tortious interference with a business relationship, a plaintiff must show: (1) the existence of a valid contractual relationship or business expectancy; (2) the interferer's knowledge of the relationship or expectancy; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 494 (Ariz. 1995); *see also Miller v. Hehlen*, 104 P.3d 193, 202-03 (Ariz. Ct. App. 2005); *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981); and *Malpiede v. Townson*, 780 A.2d 1075, 1099 (Del. 2001). In addition, the interference must be "improper" before liability will attach. *Miller*, 104 P.3d at 202-03.

In *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1042 (Ariz. 1985), *abrogated on other grounds by*, A.R.S. § 23-1501, the Court adopted the following seven factors, listed in Section 767 of the RESTATEMENT, to determine whether an interference is improper:

(a)     the nature of the actor's conduct,

(b)     the actor's motive,

(c)     the interests of the other with which the actor's conduct interferes,

(d)     the interests sought to be advanced by the actor,

(e)     the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f)     the proximity or remoteness of the actor's conduct to the interference, and

(g)     the relations between the parties.

*See also Am. Homepatient Inc. v. Collier*, No. Civ. A. 274-N, 2006 WL 1134170 (Del. Apr. 19, 2006) (unpublished).

Again, the allegations fail to make a *prima facie* case that the web postings allegedly authored by Member Doe 1 were improper. Second, there is no evidence that Member Doe 1 had any improper motive to engage in political discussions regarding certain directors. Third, BWI cannot demonstrate that the Blog postings interfered with or caused a breach or termination of the business relationship or expectancy. Finally, and perhaps most importantly, BWI cannot establish that it suffered any damages from the alleged disruption. Accordingly, BWI has not made a *prima facie* showing of tortious interference and, therefore, the subpoena to LNH should be quashed on that basis.

Even if BWI had established a *prima facie* showing against Member Doe 1, which it has not, it would not be entitled to override Member Doe 1's First Amendment Rights. In ruling on Jane Doe 1's Motion to Quash, the Court must balance Jane Doe No. 1's well-established First Amendment right to speak anonymously against BWI's right to protect its interest in pursuing its claims based on actionable conduct by a Free Write message board user.

*See Immunomedics, Inc. v. Doe*, 775 A.2d 773, 776 (N.J. Super. Ct. 2001). In this context, the Court should require "plaintiff to identify and set forth the exact statements purportedly made by each anonymous poster that plaintiff alleges constituted actionable speech." *Dendrite Intern. v. Doe No. 3*, 775 A.2d 756, 760 (N.J. Super. Ct. 2001) Such balancing is critical to ensure "that plaintiffs do not use discovery procedures to ascertain the identities of unknown defendants in order to harass, intimidate or silence critics in the public forum opportunities presented by the Internet." *Id.* at 771; *see also Cahill*, 844 A.2d at 457 (noting that "[t]he revelation of identity of an anonymous speaker may subject that speaker to ostracism for expressing unpopular ideas, invite retaliation from those who oppose her ideas or from those whom she criticizes, or simply unwanted exposure to her mental processes." (citations, internal quotations and alterations omitted)).

## CONCLUSION

To synopsize, because BWI has failed to demonstrate that the statements comprising Exhibits B1 through B28 are false and defamatory, of concern to BWI, or were made outside the scope of Member Doe 1's qualified privilege. Furthermore, BWI has failed to demonstrate that Member Doe 1 breached an express or implied contract, or a covenant of good faith and fair dealing or tortiously interfered with a prospective business relationship or contract. . Therefore, Member Doe 1's constitutional right to engage in anonymous free speech over the Internet greatly outweighs BWI's alleged interest, if any, in protecting alleged damage to its reputation. As a consequence, this Court should quash the subpoena issued to LNH and enter a protective order preventing the discovery requested.

OF COUNSEL:

Daniel McAuliffe
Todd Feltus
Gregory B. Collins
SNELL & WILMER
One Arizona Center
Phoenix, AZ  85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070


Richard T. Mullineaux
R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP
One Commerce Square
4106 Charlestown Road
New Albany, IN 47150
Phone: (812) 949-2300
Facsimile: (812) 949-8556


Date:  December 11, 2006
Public Version Dated:  December 15, 2006
766626v2
public version:767627

POTTER ANDERSON & CORROON LLP


By  *William R. Denny*

    William R. Denny (ID No. 2580)
    James M. Kron (I.D. No. 3898)
    Hercules Plaza, 6th Floor
    1313 North Market Street
    P.O. Box 951
    Wilmington, Delaware  19899-0951
    (302) 984-6000
    Fax:  (302) 658-1192
    wdenny@potteranderson.com
    jkron@potteranderson.com

*Attorneys for Defendant Jane Doe 1*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that, on this 15[h] day of December

2006, a copy of the Public Version of Defendant Jane Doe 1's Brief of Law in Support of Motion

to Quash Subpoena Duces Tecum Directed to Non-Party Witness L.N.H., Inc. and for a

Protective Order was served by first class mail, postage prepaid, upon the following persons:

    Cynthia A. Ricketts, Esquire
    Sara K. Regan, Esquire
    Squire, Sanders & Dempsey L.L.P.
    Two Renaissance Square
    40 North Central Avenue, Suite 2700
    Phoenix, AZ  85004-4498

    L.N.H., Inc.
    260 Chapman Road, Suite 205
    Newark, DE  19702

                          William R. Denny  (ID No. 2580)

766626v2
public version:767627